IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 7, 2017

## STATE OF TENNESSEE v. ERIC WASHINGTON aka ERIK BROCK

**Appeal from the Criminal Court for Shelby County**
**No. 14-05910          Carolyn W. Blackett, Judge**

_____

## No. W2016-00669-CCA-R3-CD

_____

Defendant, Eric Washington, appeals from the trial court's revocation of probation for his convictions for aggravated assault, domestic assault, and vandalism under $500 and order that he serve his effective ten-year sentence in confinement. Defendant contends that the trial court abused its discretion by allowing hearsay testimony at the revocation hearing and that the evidence was insufficient to support the revocation. Upon our review of the record, we hold that the trial court erred by admitting hearsay testimony without a finding of good cause or reliability and that the trial court erred in revoking Defendant's probation on a ground for which there was a lack of evidence in the record. Accordingly, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Reversed and Remanded**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. ROSS DYER, JJ., joined.

Seth M. Segraves, Memphis, Tennessee, for the appellant, Eric Washington.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Megan Fowler, and Cavet Ostner, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

*Facts*

A transcript of the guilty plea hearing is not included in the appellate record. However, we glean the following facts from the record. On November 18, 2014,

Defendant was indicted for aggravated assault, domestic assault, and vandalism under $500. He entered open guilty pleas to the charges, and the trial court imposed a sentence of ten years for his aggravated assault charge and 11 months and 29 days on each of the other two charges. The trial court suspended Defendant's sentences and ordered him to serve ten years on probation, including participation in the Jericho Project. On December 12, 2015, Defendant's probation officer filed an affidavit alleging that Defendant violated probation by incurring new criminal charges and behaving in an assaultive, abusive, threatening, and intimidating manner. The State also filed a petition for revocation of a suspended sentence, noting that Defendant had violated the law and had not abided by all of the Jericho Project conditions.

At the revocation hearing, Jacorien White, Defendant's probation officer, testified that Defendant was placed on probation on August 4, 2015. Ms. White testified that Defendant had not abided by the conditions of his probation and that he had been arrested and charged with aggravated burglary and domestic assault. She also noted that Defendant could no longer participate in the Jericho Project because he was incarcerated.

On October 6, 2015, Officer Pedro Torres, of the Memphis Police Department, responded to a report of a burglary and aggravated assault. Officer Torres and his partner met Olivia Jones, the alleged victim, at a gas station and followed her to her apartment. When they arrived at the apartment, Officer Torres observed damage to the doorframe and the lock. He testified that the door "appeared to have been kicked in." Officer Torres testified that Ms. Jones told him that her current boyfriend, Defendant, had kicked in her door. Officer Torres downloaded Defendant's picture onto his PDA and showed it to Ms. Jones, and she identified Defendant as the person who kicked in her door. Officer Torres testified that Ms. Jones received a phone call from Defendant while he was at the apartment. Ms. Jones stated, "'[t]his is him'" when she received the phone call. She talked to Defendant on speakerphone so the officers could hear. Officer Torres heard the caller "apologize[ ] for kicking in the door, and he said repeatedly, 'Don't call the police. . . . I'm going to fix the door.'"

Officer Torres testified that Ms. Jones completed an "Offer of Transportation and Hold Harmless" form in which she stated that she was taking a bath, and she heard Defendant knocking and shouting at the front door. She was getting dressed when she heard Defendant kick in her front door and accuse her of seeing another man. She told Officer Torres that Defendant picked up "a small kitchen knife," but that he did not threaten her with it, and Defendant dropped the knife "during the struggle." Ms. Jones told Officer Torres that Defendant pushed her down.

On cross-examination, Officer Torres testified that he had never spoken to Defendant and acknowledged that he could not identify Defendant's voice on the phone.

Officer Torres acknowledged that he did not find any other evidence, aside from "[j]ust what Ms. Jones told me[,]" that Defendant had kicked in the victim's door or been inside her apartment.

Defendant called Sergeant Alisa Styles, a record keeper for the Shelby County Sheriff's Office, to testify that Ms. Jones visited Defendant in jail on December 23, 2015, and on February 17, 2016.

At the conclusion of the hearing, the trial court concluded that Defendant violated the conditions of his probation because "the bottom line was, is that, if he picked up any charges whatsoever, it's a clear violation of the Jericho Project."

*Analysis*

On appeal, Defendant argues that the trial court erred by admitting unreliable hearsay and that the evidence was insufficient to support the revocation of probation. The State responds that the trial court did not abuse its discretion by revoking the Defendant's probation and ordering him to serve his sentence in confinement.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310. In reviewing the trial court's findings, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Defendant complains that the revocation hearing "was littered with the hearsay statements of the alleged victim . . . [including] the identity of the alleged attacker, the identity of a declarant who called the alleged victim's phone, the statements of the declarant on the phone, and a narrative of the alleged attack." Defendant argues that the

trial court improperly allowed Officer Torres to testify to hearsay without making a determination as to its reliability and whether there was good cause to allow it into evidence.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Typically, hearsay is not admissible. *Id*. at 802. Also, an accused has a constitutional right to confront adverse witnesses. U.S. Const. Amend. VI; Tenn. Const. Art I, § 9. This court has previously held that a defendant facing revocation of a suspended sentence, such as probation or community corrections, "may not be subject[ed] to revocation upon evidence which they have had no opportunity to hear, test by cross-examination or refute by contrary evidence." *Stamps v. State*, 614 S.W.2d 71, 74 (Tenn. Crim. App. 1980). However, because "the issue in a probation revocation proceeding is not the guilt or innocence of the defendant, the right to confront and cross-examine adverse witnesses is not absolute and may be relaxed under certain circumstances." *State v. Wade*, 863 S.W.2d 406, 407 (Tenn. 1993).

A trial court can admit hearsay evidence at a probation hearing after making a finding as to why the information is reliable and whether good cause justifies the denial of the defendant's right to confront and cross-examine adverse witnesses. *See Wade*, 863 S.W.2d at 408; *see also State v. David James Wiley*, No. E2004-01463-CCA-R3-CD, 2005 WL 1130222, at *2 (Tenn. Crim. App. May 13, 2005), *no perm. app. filed*.

The record reflects that defense counsel made several objections to Officer Torres' testimony regarding Ms. Jones' statements to him as unreliable hearsay. The State argued that reliable hearsay is admissible in a probation revocation proceeding and cited this court's opinion in *State v. Roy Cherry*, No. W2015-01084-CCA-R3-CD, 2016 WL 520304 (Tenn. Crim. App., Nov. 3, 2015), *perm. app. denied* (Tenn., Feb. 8, 2016). In that case, the defendant pleaded guilty to several offenses, and the trial court placed him on judicial diversion. *Id*. The State filed a petition to revoke his diversion following the defendant's arrests for aggravated assault and domestic assault. At the revocation hearing, the prosecutor informed the trial court that the victim of the aggravated assault had been subpoenaed and had been in court earlier that day but had since left. *Id*. The trial court heard testimony from the officer who responded to a domestic assault call. The officer testified that the defendant's girlfriend told him that the defendant had choked her, and the officer observed marks on the victim's neck. *Id*. The officer also spoke to the defendant at the scene, and the defendant denied choking the victim, but admitted ripping the victim's jacket off. *Id*. The trial court revoked the defendant's diversion, finding by a preponderance of the evidence that the defendant had violated the terms and conditions of diversion. *Id*. A panel of this court held that, "although the trial court did

- 4 -

not make a specific finding of 'good cause' for the admission of the officers' hearsay testimony, such a finding was implicit in the trial court's words and actions." *Id*. at *3.

In the case *sub judice*, the prosecutor informed the court at the revocation hearing that the victim could not be located. The State argued that Officer Torres' testimony was reliable because he observed damage to her door. On appeal, the State argues that the trial court's findings that Officer Torres' testimony was reliable and that the State had established good cause for Ms. Jones' absence can be inferred from the record. We disagree. Clearly, the statements by Ms. Jones to Officer Torres were hearsay. *See* Tenn. R. Evid. 801(c). The trial court failed to make any finding of good cause to justify the denial of Defendant's confrontation rights, and the State offered no explanation as to why Ms. Jones, the alleged victim, was not present as a witness. There was no explicit statement that the State had even issued a subpoena for the witness at her last known address, which was definitely known by the State. The State also failed to make a showing that the information contained in these statements was reliable. Officer Torres' observation of damage to Ms. Jones' doorframe alone does not support an inference of reliability. Officer Torres acknowledged during questioning by the State that he did not know Defendant's voice and the only reason he could identify the person speaking is by what Ms. Jones stated.

*Roy Cherry*, upon which the State heavily relied in the trial court and on appeal, is not a published opinion of this court; therefore, it is only persuasive authority. The panel in *Roy Cherry* apparently relied heavily on the trial court *implicitly* finding that the hearsay presented was reliable and good cause justified its admission as substantive evidence. After a careful review of all the testimony during the probation revocation hearing, Defendant's multiple hearsay objections, the responses of the State, and the trial court's statements in its rulings (and what both the State and the trial court did not state), we are unable to conclude that it is "implicit" that the trial court determined either "good cause" or "reliability." Absent specific findings by the trial court, we conclude it was error to admit the statements over Defendant's objection.

A new arrest and pending charges are proper grounds on which a trial court can revoke a defendant's probation; however, a trial court may not rely on the mere fact of an arrest or an indictment to revoke a defendant's probation. *State v. Harkins*, 811 S.W.2d 79, 83 n. 3 (Tenn. 1991). A revocation on this basis requires the State to "produce evidence in the usual form of testimony" in order to establish the probationer's commission of another offense while on probation. *State v. Walter Lee Ellison, Jr.*, No. 01C01-9708-CR-00361, 1998 WL 272955, at *2 (Tenn. Crim. App., May 29, 1998). In cases where the alleged violation is the commission of a new offense, the State must present sufficient facts to allow the trial court to find by a preponderance of the evidence

that the conduct in question violated the law. The State's proof, consisting of hearsay evidence which was not admissible, failed to meet this test.

The State also argues in its brief that revocation of probation was justified because the trial court found that Defendant failed to complete the "Jericho Project Program," which was required in Rule #10 of Defendant's conditions of probation. However, failure to complete the "Jericho Project Program" was not alleged as a ground to revoke probation. The record contains a document which consists of both an affidavit setting forth violations of probation and a warrant for Defendant's arrest for probation violations. The grounds set forth were: violation of Rule #1, by an arrest for aggravated burglary and domestic assault, and a violation of Rule #14, by committing assaultive, abusive, threatening, and intimidating behavior by grabbing the victim and throwing her upon the floor. A "Petition for Revocation of Suspension of Sentence" was also filed. The petition alleged that one of the conditions of probation was Rule #10, which states, "I will observe any special conditions imposed by the Court as listed: Complete Jericho Project Program and all requirements and recommendations." However, the petition specifically alleges as violations of probation only violations of Rule #1 and Rule #14. Only the grounds alleged in the petition can be a basis to revoke probation. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *State v. Terry Sherrod*, No. M2016-01112-CCA-R3-CD, 2017 WL 696844, *4 (Tenn. Crim. App., Feb. 22, 2017), *perm. app. denied* (Tenn., May 18, 2017). Thus, under the circumstances, we respectfully reject the State's argument.

## CONCLUSION

Based on the foregoing and the record as a whole, we reverse the judgment of the trial court and remand this case for a probation revocation hearing consistent with this opinion.

_____
THOMAS T. WOODALL, PRESIDING JUDGE